UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| VICTOR KEEYLEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 1:19-cv-00800-JMS-MPB |
| | ) |
| ARAMARK CORPORATION, | ) |
| DAVID MASON, | ) |
| DUSHAN ZATECKY, | ) |
| DUANE ALSIP, | ) |
| MICHAEL CONYERS, | ) |
| | ) |
| Defendants. | ) |

**Entry Granting Aramark Corporation's Affirmative Defense of
Failure to Exhaust Administrative Remedies**

Plaintiff Victor Keeylen is currently incarcerated at Pendleton Correctional Facility. He filed this civil action pursuant to 42 U.S.C. § 1983. He has raised multiple claims, but only the claim against defendant Aramark Corporation is relevant to the affirmative defense now before the Court. Mr. Keeylen alleges that Aramark has a policy or practice of providing deficient food to inmates in the H Unit during lockdowns. DKt. 16. Aramark has moved for summary judgment arguing that Mr. Keeylen failed to exhaust his available administrative remedies before he filed this lawsuit as required by the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a); *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). Mr. Keeylen responded, and Aramark filed a reply.[1] For

---

[1] Mr. Keeylen submitted a surreply, dkt 51, but that surreply shall not be considered. The reason for this ruling is that "[a] party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply and must be limited to the new evidence and objections." L.R. 56-1(d). Aramark's reply did not raise admissibility objections, nor did it cite to new evidence. Accordingly, no surreply is

the reasons explained below, Aramark's motion for summary judgment, dkt [37], is **granted** because the evidence reflects that Mr. Keeylen failed to submit a grievance that complied with IDOC policy prior to filing his amended complaint.

## I. Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to

---

permitted. The Court notes that no evidence or citations to admissible evidence was submitted with the surreply.

2

"scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Trustees of Indiana University,* 870 F.3d 562, 573-74 (7th Cir. 2017).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941-42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page,* 906 F.3d 606, 609-10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

## II. Undisputed Facts

The following facts, supported by admissible evidence, are accepted as true for the purpose of resolving this motion.

Mr. Keeylen filed his original complaint in this matter on February 22, 2019. Dkt. 2. Mr. Keeylen amended his Complaint and filed it with the Court on May 15, 2019. Dkt. 14. In the amended complaint, Mr. Keeylen alleged Aramark had demonstrated a policy or practice of providing deficient food to inmates in the H Unit of Pendleton Correctional Facility during lockdowns.

The Indiana Department of Correction (IDOC) has an Offender Grievance Process, identified as policy number 00-02-301 (effective October 1, 2017)[2]. Dkt. 38-2.

The stated intent of the Offender Grievance Process is to provide a mechanism for every offender to express complaints and topics of concern, for the efficient and fair resolution of legitimate offender concerns, and for facility and IDOC management to be better informed and better able to carry out the IDOC's mission and goals. Dkt. 38-2 at p. 1. Accordingly, information on the Offender Grievance Process is included with the Admission & Orientation (A&O) Paperwork for offenders entering Pendleton. A copy of the policy for the Offender Grievance Process is also available to offenders through the Law Library. DKt. 38-1 at ¶ 8.

The October 1, 2017, Offender Grievance Process consists of four stages. First, an offender must attempt to resolve the grievance informally through officials at the facility. Dkt. 38-2 at p. 8-9.

Second, if the offender is unable to obtain a resolution informally, the offender may submit a formal grievance to the Offender Grievance Specialist within 10 business days from the date of the incident giving rise to the complaint or concern. *Id.* at 9. The appropriate form for submitting grievances (State Form 45471, OFFENDER GRIEVANCE) is available upon request to inmates through any staff member at the facility. Dkt. 38-1 at ¶ 12. The Offender Grievance must meet certain standards including: the form must be completed and shall relate to only one event or issue. The Offender Grievance Process specifically provides that the Grievance Specialist shall review the grievance form and either accept and log it, or reject it. Dkt. 38-2 at p. 10. If the grievance form

---

[2] Mr. Keeylen notes that the policy was updated on April 1, 2020. See https://www.in.gov/idoc/files/00-02-301%20Grievances%204-1-2020.pdf. But the new grievance policy was enacted after Mr. Keeylen filed his original and amended complaints such that the October 1, 2017, Offender Grievance Process is the applicable policy for the purposes of this ruling.

is rejected, the Grievance Specialist shall return the grievance form with an explanation. The prisoner then has the opportunity to make necessary revisions to the grievance form and to return the revised form to the Grievance Specialist within five business days from the date it is returned to the offender. *Id.* at p. 10.

Third, if the formal grievance is not resolved in a manner that satisfies the offender, he may submit an appeal (Level 1) within five (5) business days from the date of receipt of the grievance response. *Id.* at p. 12.

Fourth, if the offender is not satisfied with the Level 1 appeal response, he may then request that the appeal be sent to Central Office, Department Offender Grievance Manager, for a Level II appeal, which is the final appeal level. *Id.*

The Offender Grievance Process is not complete until the inmate completes the appeal process. Dkt. 38-2 at ¶ 15.

Mr. Keeylen was incarcerated at Pendleton Correctional Facility at the time of the alleged incident. Mr. Keeylen's recorded grievance history reflects that he filed two food related grievances.

On February 21, 2019, Mr. Keeylen filed a grievance on Form 45471 complaining that Aramark had "conspired with IDOC/ISR to endanger [Mr. Keeylen] as well as other inmates at [the prison] by feeding the prisoner population soy in unconstitutional/life threatening amounts." Dkt. 38-4 at p. 2. The grievance further complained that during lock down periods food safety requirements were disregarded and cold food was served. In terms of relief, Mr. Keeylen sought "No Soy return to real beef" and "No Cold meals even during lockdowns." *Id.*

5

This grievance was rejected. *Id.* at 1. The Grievance Specialist rejected the grievance noting four deficiencies: 1) the grievance was not filed within 10 business days from the date of the incident giving rise to the complaint, 2) the grievance was submitted on behalf of Mr. Keeylen and other prisoners, 3) the grievance form is not completely filled out, and 4) the grievance contained multiple issues or events. The Return of Grievance Form stated "[i]f you choose to correct the problem(s) listed above, you must do so and re-submit this form within five (5) business days." *Id.* Mr. Keeylen failed to do so. Dkt. 38-1 at ¶ 17(c).

On February 25, 2019, the Grievance Specialist received a grievance Mr. Keeylen dated January 14, 2019, making similar complaints. The grievance complained that Mr. Keeylen received cold food of poor quality, that there was bodily waste in his toilet, and the lights and water were being turned off for long periods. Dkt. 38-5 at p. 2. This grievance was also rejected by the Grievance Specialist because it was not submitted within 10 business days from the date of the date of the incident giving rise to the complaint, and the grievance contained multiple issues or events. Dkt. 38-5 at p 1. Mr. Keeylen was again instructed that he could correct the problems identified and re-submit the form within five days. *Id.* The grievance was not resubmitted. Dkt. 38-1 at ¶ 17(c).

Following the two grievances identified above, Mr. Keeylen did not file any additional grievances against Aramark related to his diet. Dkt. 38-1 at ¶ 17(c).

### III.  Discussion

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *See Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006) (footnote omitted); *see also Dale v. Lappin,* 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'") (quoting *Pozo v. McCaughtry,* 286 F.3d 1022, 1025 (7th Cir. 2002)). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson,* 362 F.3d 395, 397 (7th Cir. 2004).

Because exhaustion of administrative remedies is an affirmative defense, the burden of proof is on the defendants to demonstrate that Mr. Keeylen failed to exhaust all available administrative remedies before he filed this suit. *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). Aramark argues that Mr. Keeylen failed to exhaust his administrative remedies prior to filing this action and that the claims alleged against them should be dismissed. Dkt. 38.

In response, Mr. Keeylen makes arguments in support of his claim that he did exhaust all available remedies but offers no additional evidence beyond what Aramark provided. Mr. Keeylen argues that the grievance specialist works to find error with the grievance to keep it from being filed. Mr. Keeylen further explains that he complied with all grievance procedures and that the rejection of his two grievances supports his arguments. Dkt. 48 at p. 2.

Unfortunately for Mr. Keeylen, however, his grievances were rejected consistent with IDOC's Offender Grievance Policy because they included more than one issue. He was specifically given the opportunity to correct this problem but failed to do so. This is not a situation where "(despite what regulations or guidance materials may promise) [the grievance process] operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016). There was no error in the Grievance Specialist requiring Mr. Keeylen to submit a grievance that was limited to a single complaint as required by IDOC policy. The "applicable procedural rules" that a prisoner must properly exhaust are defined not by the PLRA, but by the prison grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218 (2007). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 808 (7th Cir. 2006). Thus, "[a] prisoner must properly use the prison's grievance process. If he . . . fails to do so, the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Id.*

Mr. Keeylen has not directed the court to any additional evidence that supports his theory that he submitted other grievances that address the claims raised against Aramark in this case. The designated evidence shows that there was an available administrative remedy process and that Mr. Keeylen did not exhaust those administrative remedies. Mr. Keeylen filed two grievances that were returned to him with a description of what was wrong with the grievance. Specifically, the grievances included unrelated claims. He failed to correct this error and resubmit his grievance prior to filing this civil action. Summary judgment is therefore appropriate as to Aramark Correctional Services, LLC.

## IV. Conclusion

Here, defendant Aramark has shown that Mr. Keeylen failed to complete the steps of the administrative process as to the claim alleged against Aramark. The consequence of Mr. Keeylen's failure to exhaust his administrative remedies, in light of 42 U.S.C. § 1997e(a), is that these claims must be dismissed without prejudice. *See Ford*, 362 F.3d at 401 (holding that "all dismissals under § 1997e(a) should be without prejudice").

This Entry does not resolve all claims against all parties. However, there is no just reason to delay final judgment in favor of Aramark. Fed. R. Civ. P. 54(b). Aramark's defense is independent from the merits of Mr. Keeylen's claims, so any appeal will not duplicate judicial or the parties' efforts. *Doe v. Vigo Cnty. Ind.*, 905 F.3d 1038, 1042 (7th Cir. 2018). Accordingly, final judgment shall issue as to the claims resolved in this Entry.

**IT IS SO ORDERED.**

Date: 6/5/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

VICTOR KEEYLEN
950970
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Marley Genele Hancock
INDIANA ATTORNEY GENERAL
marley.hancock@atg.in.gov

Brandon Alan Skates
INDIANA ATTORNEY GENERAL
brandon.skates@atg.in.gov

Georgianna Q. Tutwiler
HUME SMITH GEDDES GREEN & SIMMONS
gquinn@humesmith.com